No. 1407.—JAMES A. LUSK *v.* GRAHAM & COLE.

Where one of three partners sells his interest in the partnership to the other two, who execute their agreement in writing signed in their individual capacity, which he terms a counter letter, and he afterwards brings suit for a liquidation and settlement of the partnership affairs, and to recover his share of the profits according to the terms and stipulations of the counter letter, any amount that may be found to be due by them on account of the purchase or profits must be borne jointly, and not *in solido*, each paying one-half thereof.

The rule to be observed in making a settlement of partnership transactions is to ascertain the value of the assets, composed of the property, credits and receipts belonging thereto, and from the aggregate amount deduct the debts and expenditures; the balance remaining to be divided in accordance with the terms and stipulations of the partnership.

APPEAL from the Fourth District Court of New Orleans, *Theard*, J. *C. Roselius* and *R. H. Marr*, for plaintiff and appellant, *Clark & Bayne* and *P. Soule*, for defendant and appellee.

HOWEL, J. In 1855 the plaintiff and defendants, as partners under the style of Graham & Co., had a contract with the city of New Orleans for the collection of the revenues of two sections of the wharves, for three years from the first of October of that year. On the twenty-seventh of October, 1857, the plaintiff, by contract under private signature, afterwards made authentic, sold his interest therein to the defendants for the sum of $8,813 94, retaining the following agreement which he terms a " counter letter."

"WHEREAS, James A. Lusk has this day transferred to us his interest in the wharves and in the firm of Graham & Co., for the sum of eight thousand eight hundred and thirteen and ninety-four one hundredth dollars, we agree, after the affairs of Graham & Co. connected with the wharves, are all liquidated, in case one third of the profits amounts to more than the above sum, to pay the said Lusk or anybody he may assign this to, one third of the amount of profits over and above the amount specified above, reserving the right to deduct any amount that may be due, or for which we are responsible for J. A. Lusk, L. Y. Lusk and Lusk & Co., either to Josiah Cole or D. S. Graham.

(Signed) "JOSIAH COLE,
"D. S. GRAHAM."

In December, 1858, J. A. Lusk brought this suit for a liquidation and settlement of the partnership and to recover his share of the profits, upon the theory that the above instrument continued the partnership as it was before the transfer. After the proceedings in the lower court had advanced to a certain stage, the plaintiff took an appeal from the rulings of the judge *a quo* to this court, when the opinion was expressed, that the parties had acquiesced in the ruling of the lower court, to the effect that the plaintiff had no right, as a partner by virtue of the counter letter, to demand a liquidation and settlement of the partnership affairs, but that as a creditor of the firm he had the right to demand the rendition of an account, for the purpose of ascertaining the surplus of one third of the net profits, if any, to which he

might be entitled under the agreement, in addition to the fixed price of $8,813 94; and that the account thus to be rendered should embrace the business of the partnership from the date of the partnership contract and not from the date of the counter letter, as contended by the defendants; and it was decreed that the auditors to whom the accounts between the parties had been referred, "pass upon and state the accounts between the plaintiff and defendants, from the date of the contract of partnership," and the cause was remanded for further proceedings.

This appeal is taken by plaintiff from a judgment homologating the report of the umpire upon said reference, the two auditors representing the parties not agreeing.

This report professes to be in conformity to the order of the Supreme Court and proceeds upon the basis that the accounts between the parties were adjusted at the date of sale and counter letter, and as the books of the concern had been destroyed by fire prior to said date, the examination was confined to the accounts subsequent thereto, taking the price then agreed on ($8,813 94) as the measure of plaintiff's interest in the profits to said date, and which sum is stated as the amount then due by plaintiff to defendants, to be deducted from the profits subsequently accruing to plaintiff.

To this report, which finds a balance due by plaintiff, he filed objections, which he calls exceptions, asserting its nullity as to forms of proceeding, and denying its correctness in substance.

As we are called on to dispose of the case on the record before us, we deem it unnecessary to express an opinion upon the question of form, and will use the report so far as supported by evidence and admissions, as an aid in coming to our conclusion.

According to the counter letter, the plaintiff sold his one-third interest in the wharves to the firm of Graham & Co. for $8,813 94, with the understanding that if, upon a final settlement of the affairs of said firm connected with the lease of the wharves, one-third of the net profits should exceed said sum, such excess should be paid to him as a further consideration or price, deducting therefrom any indebtedness of J. A. Lusk, the plaintiff, L. Y. Lusk and Lusk & Co. to the vendees, Cole & Graham. The sum of $8,813 94 was fixed and paid, with a contingency that it might be increased, if the wharf contract with the city should turn out so far successful as to make one-third of the net profits upon the whole contract exceed that sum. If it should prove unsuccessful or unprofitable in its total result, plaintiff would still have realized that sum by his connection with it.

We think the process of ascertaining the profits, in principle, a simple and easy one, the assets, composed of the property, credits and receipts to be ascertained, and from the aggregate deduct the debts and expenditures. If one-third of the balance exceeds $8,813 94, this sum

must by the terms of the counter letter be deducted, and the remainder paid to plaintiff.

This course, however, has not been pursued by any of the auditors, who have all investigated only the accounts subsequent to the twenty-seventh of October, 1857, except two items (cash on hand at that date, and sundry bills then existing but afterwards paid by the vendees, Graham & Cole), which make no material change in the result.

After a careful examination of all the facts and figures, we have concluded, as the only course authorized by the record, to adopt the hypothesis, that at the date of the transfer by plaintiff to defendants, the former had received from the concern $8,813 94 (the price stipulated) more than his share of the actual cash profits realized, without reference to the stock of materials, etc., then on hand, and that at the end of the lease the excess of one third of the net profits over said sum is due to him. The fact as shown, that this sum is the exact amount he then owed the partnership, and the small amount of cash on hand at the time sustain this view, which will enable us to effect an equitable adjustment of the rights of the parties, without the expense and delay of another reference to auditors, and without a specific and detailed account of all the business prior to said transfer, which would be more satisfactory and in accordance with the former decree of this court.

We have availed ourselves of the calculation made by plaintiff's counsel in "statement No. 1," making such corrections as we think the record supports.

The first correction is in the item of cash received from "wharfage dues," which plaintiff takes from the bank book of deposits, and the defendants from the "collection books." It is shown that the revenues of the wharves were the only source of income of the partnership business, and that, as collected, they were regularly entered in the "collection books," and we therefore consider these books rather than the bank book, as the correct evidence of said receipts. These various books are not before us, but we may presume that items of cash in the account of defendants with the bank, such as price of a steamboat, dividends on stocks, sums checked out and returned, etc., may constitute some of the deposits and account for the alleged discrepancy in the several books. We do not consider plaintiff in the situation to avail himself of any presumptions against defendants as to this matter. His opportunities to make it clear seem to be little less than those of defendants. We include $120 dividend on stock of Bank of America, contained in the report of defendants' auditor, but not in the statement of counsel. Of the disbursements, to the item for materials, labor, expenses, etc., as proved by Starke, plaintiff's auditor, we add the two sums $466 and $200, for the omission or rejection of which we see no good reason. They are evidently a part of the transactions of the concern and rest upon the same basis as similar items.

We limit the salaries of the parties to October 1, 1858, when the lease terminated and their reciprocal contract as to this matter expired. Having assumed plaintiff's obligations to the city, the defendants were

James A. Lusk v. Graham & Cole.

bound to him to put the wharves in good order, and if they delayed doing so until after the expiration of the lease, they cannot properly charge him a salary for superintending such work. For the cost of these repairs we adopt the figures of plaintiff's auditor as correct. We thus have the following statement:

ASSETS.

| | | |
|---|---:|---:|
| Cash on hand October 27, 1857 | $3,191 | 35 |
| Wharfage dues from October 27, 1857, to October 1, 1858 | 143,428 | 30 |
| Price of steamer Grenada | 4,000 | 00 |
| Dividend on stock of Bank of America | 120 | 00 |
| Received for labor in September, 1858 | 150 | 00 |
| Wharfage of steamers Bluff City, Eclipse, America and Trabue | 489 | 40 |
| Materials, labor, etc., taken to account by Graham & Cole | 5,850 | 51 |
| Sale of 20 shares Bank of America stock and dividends | 2,360 | 00 |
| Dividends on stock of Texas Steamship Company | 2,670 | 00 |
| Sale of tools, machinery, etc., to city | 3,140 | 50 |
| Use of same after October 1, 1858 (in report of umpire) | 405 | 00 |
| Total assets | $165,805 | 06 |

DISBURSEMENTS.

| | | |
|---|---:|---:|
| For materials, labor, wages, price of steamer Grenada | $29,517 | 16 |
| For Bank of America stock | 1,916 | 97 |
| For rent notes to the city | 51,346 | 18 |
| For salary of J. A. Lusk from November 1, 1857, to October 1, 1858 | 1,375 | 00 |
| For salary of D. S. Graham from November 1, 1857, to October 1, 1858 | 1,833 | 33 |
| For salary of J. Cole from November 1, 1857, to October 1, 1858 | 916 | 67 |
| For rent of office eight months | 120 | 00 |
| For repairing wharves (Starke's report) | 19,000 | 75 |
| For sundry bills incurred before and paid after October 27, 1857 | 4,638 | 96 |
| Total disbursements | $110,665 | 02 |
| Balance, profits | 55,140 | 04 |
| | $165,805 | 06 |

CR.

| | | |
|---|---:|---:|
| Profits brought down | $55,140 | 04 |
| Lusk's one third thereof | $18,380 | 01 |
| Lusk's salary, unpaid, to October 1, 1858 | 625 | 00 |
| Rent of office to Lusk | 120 | 00 |
| | $19,125 | 01 |

James A. Lusk v. Graham & Cole.

**DR.**

Amount paid Lusk, October 27, 1857,.............$8,813 94
Amount paid Lusk by Graham, September, 1858.  7,500 00
Amount paid Lusk by Cole, September, 1858....  1,260 00
Amount wharfage of Bluff City, charged to Lusk.   220 00
Amount wharfage of Eclipse and America, charged
   to Lusk.....................................   184 40
                                             $17,978 34
Balance due Lusk with five per cent. interest
   from October 1, 1858.......................      $1,146 67

From these figures it will be seen that the price actually received by Lusk for his interest in the lease of the wharves, $19,125 01, besides what, upon the hypothesis adopted by us, he realized prior to the date of his transfer to the defendants—twenty-seventh October, 1857. The presumption is, from the character of the business, he drew his profits as they accrued, and that at said last date, he had overdrawn his share to the amount of $8,813 94, and during the remaining eleven months he received from his former partners $8,760 besides his salary.

It is therefore ordered that the judgment appealed from be reversed, and that the plaintiff recover from the legal representatives of the defendants *in solido* the sum of eleven hundred and forty-six and sixty-seven one hundredth dollars with legal interest from October 1, 1858, until paid and costs of suit in both courts.

---

### On Rehearing.

Howe, J. A rehearing was granted in this case upon the single question whether or not the defendants are bound *in solido*.

We are of opinion that the obligation of the defendants was joint, and not solidary.

It is therefore ordered that the judgment heretofore rendered by us be set aside. It is further ordered that the judgment appealed from be reversed, and that the plaintiff recover from the legal representatives of the defendants the sum of eleven hundred and forty-six and sixty-seven one hundredth dollars with legal interest from October 1, 1858, until paid, and costs in both courts. One half to be paid by the representatives of the defendant Graham, and one half by the representatives of the defendant Cole.